1

THE HONORABLE RICARDO S. MARTINEZ

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9   MSC VENTURE CORP. SDN BHD and          Case No. 06-CV-01731 RSM
    MSC VENTURE ONE SDN BHD,
10
                Plaintiffs,                 FIRST AMENDED COMPLAINT
11
    v.
12
    ESMOND GOEI and EVELYN GOEI,
13
                Defendants.
14
    _____
15  ESMOND GOEI,

16              Third-Party Plaintiff,

17  CYPHERMETRIX, INC., a Delaware
    Corporation; CYPHEREDGE
18  TECHNOLOGIES INC., a Delaware
    Corporation; and JAMES B. LINKOUS,
19
                Third-Party Defendants.
20  _____

21        With written consent and stipulation of Defendant and Third-Party Plaintiff Esmond

22  Goei, Third-Party Defendants and Counterclaimants CypherMetrix, Inc., CypherEdge

23  Technologies, Inc., and Third-Party Defendant James B. Linkous within the meaning of

24  Federal Rule of Civil Procedure 15(a), Plaintiffs MSC VENTURE CORPORATION SDN

25  BHD and MSC VENTURE ONE SDN BHD, by their attorneys Schwabe Williamson &

26  Wyatt and Hofheimer Gartlir & Gross, LLP file the following First Amended Complaint

FIRST AMENDED COMPLAINT- 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA  98101
206.622.1711

adding Evelyn Goei as a defendant and allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiff MSC Venture Corporation Sdn Bhd ("MSCVC") is a Malaysian corporation with its principal place of business in Kuala Lumpur, Malaysia.

2.      Plaintiff MSC Venture One Sdn Bhd ("MVI") is a Malaysian corporation with its principal place of business in Kuala Lumpur, Malaysia.  Collectively MSCVC and MVI will be referred to herein as "MSC" or "plaintiffs."

3.      Upon information and belief, defendant Esmond Goei ("Goei") is a citizen of the State of Colorado.

4.      Upon information and belief, defendant Evelyn Goei ("Goei") is a citizen of the State of Colorado and is the wife of Esmond Goei.

5.      This Court has subject matter jurisdiction of this matter by reason of the complete diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332.  The amount in controversy, exclusive of interest, is in excess of Seventy Five Thousand Dollars ($75,000).

6.      Venue exists in this District pursuant to 28 U.S.C. §§ 1391(a) because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FIRST CLAIM FOR RELIEF
## FOR BREACH OF FIDUCIARY DUTY AGAINST GOEI

7.      Plaintiffs repeat and reallege Paragraphs "1" through "6" above as if fully set forth herein.

8.      Defendant Esmond Goei was the Chief Executive Officer and a director of CypherMetrix, Inc. ("CypherMetrix"), a Delaware corporation with its principal place of business at 13810 SE Eastgate Way, Suite 160, Bellevue, Washington 98005.  From on or about August 2003 to August 10, 2006, Goei was Chief Executive Officer of MSCVC

FIRST AMENDED COMPLAINT- 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1   and a director of MVI.  Goei was terminated as Chief Executive Officer and director of

2   CypherMetrix at the end of November 2006.

3           9.      While Chief Executive Officer of MSCVC and a director of MVI,

4   Goei caused them to invest approximately Seventeen Million Three Hundred and Sixty

5   Thousand Dollars ($17,360,000) in CypherMetrix and/or its subsidiaries.

6           10.     By reason of plaintiff's $17,360,000 investment in CypherMetrix

7   and/or its subsidiaries, plaintiffs owned approximately fifty-nine percent (59%) of

8   CypherMetrix and continue to own over fifty percent.

9           11.     CypherMetrix is a holding company owning subsidiaries directly and

10  indirectly, in the United States, China, Singapore and Malaysia.  CypherEdge, Inc.

11  ("CypherEdge"), a Delaware corporation with the same principal place of business as

12  CypherMetrix in Bellevue Washington, is the chief operating subsidiary of CypherMetrix in

13  the United States.  CypherEdge is a software company whose products include software that

14  analyzes data for telephone companies.  The subsidiaries of CypherMetrix doing business in

15  China, Malaysia and Singapore provide software, media and advertising services.

16          12.     Goei, when Chief Executive Officer of MSCVC and a director of

17  MVI, represented to plaintiffs that he was pursuing this investment in CypherMetrix to create

18  a Japanese style "keiretsu" in which plaintiffs' portfolio companies would compliment other

19  companies in the group.  Goei represented that this coordination of interlocking companies

20  would benefit plaintiffs.  He further represented that CypherMetrix, as holding company for

21  this "keiretsu" venture, should focus its business efforts in the United States and China.  This

22  alleged strategy was outlined by Goei in an article dated March 16, 2005.  Pursuant to this

23  corporate strategy, Goei induced plaintiffs to cause the corporation now known as

24  CypherMetrix to acquire ownership of CypherEdge.  Prior to this acquisition, MVI had

25  already invested in the corporation now known as CypherEdge.

26          13.     Unbeknownst to plaintiff, Goei had an undisclosed scheme to resign

FIRST AMENDED COMPLAINT- 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1  from plaintiff to become Chief Executive Officer of CypherMetrix after plaintiff provided

2  the financing. In addition, Goei had the undisclosed scheme to divert all United States assets

3  of CypherMetrix to its Asian subsidiaries where he would wrest ownership and control away

4  from CypherMetrix and plaintiffs, as the principal owner of CypherMetrix.

5           14.     Goei, in breach of the fiduciary duty that he owed to plaintiffs and in

6  breach of applicable law, engaged in a de facto liquidation of the United States based assets

7  of CypherMetrix, including CypherEdge. Without the requisite board and shareholder

8  approval, Goei had been causing the assets of CypherEdge, CypherMetrix's principal United

9  States subsidiary, to be transferred without fair consideration to Asian subsidiaries and

10 affiliates of CypherMetrix.

11          15.     Many of the known actions of Goei defy rationality and constitute a

12 willful waste of corporate assets. Upon information and belief, Goei caused CypherMetrix

13 and CypherEdge to engage in a liquidation of assets in the United States, without any attempt

14 to maximize the value of the assets. This willful destruction of a business is contrary to any

15 possible reasonable business judgment. Goei acted intentionally with a purpose other than

16 advancing the best interests of CypherMetrix and with the intent to violate applicable

17 positive law.

18          16.     This willful destruction of the United States assets of CypherMetrix

19 and/or CypherEdge demonstrates that there had been a sustained and systematic failure of the

20 directors of CypherMetrix to exercise oversight over the actions of Goei and an utter failure

21 by the directors to attempt to assure that a reasonable information and reporting system exists

22 such that the directors knew what actions Goei was taking.

23          17.     The wrongful and destructive acts of Goei included the following:

24          A.      On or about March 31, 2005, CypherEdge (then known as NexusEdge)

25 acquired CypherMetrix, Inc., a software company, for approximately $2 Million in

26 NexusEdge stock. In September, 2006 the CypherEdge (NexusEdge) stock was converted to

FIRST AMENDED COMPLAINT- 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1   CypherEdge stock as part of Goei's "keiretsu" strategy. By reason of this acquisition,

2   CypherEdge was able to acquire a contract to implement "CallMine" software developed by

3   CypherEdge into the data base of one of the largest United States cell phone carriers. This

4   contract required that the underlying data remain secure within the United States. Upon

5   information and belief, this contract is the largest contract held by CypherEdge.

6   Notwithstanding these contractual provisions and notwithstanding applicable privacy laws of

7   the United States, Goei caused the sensitive client data to be stored in servers located in

8   China and/or Singapore. Goei further caused the source code for the "CallMine" software to

9   be brought to China and/or Singapore. There is inadequate security protection for this source

10   code and data offshore. Upon information and belief, Goei willfully breached the largest

11   contract of CypherEdge and compromised the security of one of its principal assets as part of

12   a scheme to remove all CypherMetrix assets to Asia where he can have complete and

13   unfettered control.

14         B.    Goei caused United Sino-Resources Sdn Bhd ("Sino Resources"), a

15   Singapore company doing business in China, which is an indirect subsidiary of

16   CypherMetrix, to overbill CypherEdge in an amount in excess of $500,000. By this

17   fraudulent scheme, Goei caused assets of CypherEdge to be transferred to Singapore and/or

18   China. Goei further terminated the licensing of the "CallMine" software in the United States

19   (despite it being the basis for the largest contract of CypherEdge) and directed the transfer of

20   this software to China. Upon information and belief, Goei has been operating a separate

21   business, owned by him, through the facilities and employees of Sino Resources and has

22   been using the assets of CypherEdge to finance his own, separate, independent business.

23         C.    As part of a scheme to transfer funds to Cosmos Discovery Sdn Bhd

24   ("Cosmos"), an indirect subsidiary of CypherMetrix, in 2005 Goei caused Sino Resources

25   and Infosation Pte Ltd. ("Infosation"), another indirect subsidiary of CypherMetrix, to pay

26   Cosmos Two Million Dollars ($2,000,000) for a two year right of first refusal for business

FIRST AMENDED COMPLAINT- 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1  ventures to be entered into by Cosmos.  When Cosmos actually did proceed to enter into a

2  business venture later in 2005, Goei caused Sino Resources and Infosation to waive the right

3  of first refusal.  Upon information and belief, Sino Resources and Infosation never entered

4  into any transaction with Cosmos and the right of first refusal had no value for them.  Upon

5  information and belief, these rights at first refusal were a sham and a means to benefit Goei's

6  own personal business interests in China undertaken through, or in conjunction with,

7  Cosmos.

8          D.      As part of his scheme to divert funds to China Goei caused Infosation

9  to loan CypherMetrix One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) and

10  for CypherMetrix to, in turn, loan this $1,750,000 to Cosmos.  Upon information and belief,

11  the purpose of these loan transactions was to benefit Goei's own personal business interests

12  in China undertaken through, or in conjunction with, Cosmos.

13          E.      As part of his campaign to discontinue all United States operations and

14  transfer assets to China and Singapore, Goei either terminated all CypherEdge employees in

15  the United States and/or placed them on "forced vacation."  These terminations were in

16  violation of contractual rights of the employees and left CypherEdge unable to conduct

17  business in the United States.

18          F.      The termination of employment of CypherEdge's employees by Goei

19  made it impossible for CypherEdge to provide customer support for software that it had sold

20  or licensed.  For example, Xerox Corporation executed a three year Master Services

21  Agreement for use of Intelligent Services Network software on July 27, 2006.  (Intelligent

22  Services Network software had been developed by RazorLynx, LLC, a company acquired by

23  CypherEdge on or about December 31, 2005).  The Master Services Agreement included a

24  substantial investment by Xerox for marketing this software to some of its highest profile

25  clients.   CypherEdge obtained the benefit of the Master Services Agreement including

26  revenue from the first two sales by Xerox, but could not fulfill its contractual obligations to

FIRST AMENDED COMPLAINT- 6

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1    Xerox to service the software because it has terminated all its employees. Based on Goei's

2    actions Xerox terminated the Master Services Agreement with CypherEdge on or about

3    October 28, 2006.

4           G.     Several months ago, NER Data Products, Inc. ("NER") approached

5    CypherEdge with an offer to purchase a license for Intelligent Services Network software in

6    North America for a 2% license fee including a $1,000,000 minimum payment. This

7    agreement would have been, except for a few particular companies, non-exclusive. Goei

8    broke off these negotiations and thereafter sought to license the same Intelligent Services

9    Network software in North America and Europe for a minimum payment of only $112,000

10   as part of a 1% license fee. This subsequent proposed agreement was for full exclusive use

11   of the Intelligent Services Network software for the Americas and Europe, which destroyed

12   the ability to license the software to others.

13          H.     Goei refused to allow CypherEdge software to be sold or licensed in

14   the United States, stating that this software will all be transferred to operations in China.

15          I.     Upon information and belief, Goei without authorization took personal

16   loans from subsidiaries of CypherMetrix of approximately $300,000 and sought to alter the

17   books and records to show that no amounts were owed by him. Upon further information

18   and belief, Goei caused CypherMetrix and/or its subsidiaries to accrue salary for him while

19   he still was Chief Executive Officer of plaintiffs, and to pay him this accrued "salary" after

20   he became Chief Executive Officer of CypherMetrix.

21          J.     On or about August 18, 2006, Goei obtained a $191,870 bonus in

22   Singapore dollars (approximately $122,000 American dollars) from Infosation. Goei further

23   received a salary of $20,000 a month in Singapore dollars (approximately $12,700 American

24   dollars) from Infosation from August 18, 2006 through November 2006 (a total of $68,000 in

25   Singapore dollars). In total, Goei received $259,870 in Singapore dollars (approximately

26   $165,000 in American dollars) in compensation from Infosation in 2006, yet provided no

FIRST AMENDED COMPLAINT- 7

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1  services to Infosation. There was no consideration for these payments to Goei. The directors

2  of CypherMetrix, to the extent that they ratified these payments, could have done so

3  consistent with the fiduciary duties that they owed to CypherMetrix only upon the

4  understanding that Goei would provide future services in exchange for this compensation,

5  which services Goei never provided.

6          K.     Goei, prior to his termination, caused CypherMetrix and its

7  subsidiaries to destroy and remove records. In particular, on or around November 30, 2006,

8  Goei instructed employees to clean out and remove files (including electronically shared

9  information) and to remove hard drives and computers. Goei willfully attempted to impede

10 investigation of his wrongdoing and plaintiffs' ability to recover from him.

11         18.    Upon information and belief, it was Goei's scheme to divert all United

12 States assets of CypherMetrix to China and Singapore where he would gain ownership and

13 control. Upon information and belief, the directors of CypherMetrix have not been properly

14 advised of, nor have they authorized or approved, this strategy, which was intended to

15 benefit Goei personally and to harm plaintiffs.

16         19.    Goei, as Chief Executive Officer of MSCVC and a director of MVI,

17 owed them a fiduciary duty while he served in that capacity. Goei, as both Chief Executive

18 Officer and director of CypherMetrix owed the fiduciary duty of loyalty, care, good faith and

19 fair dealing to plaintiffs.

20         20.    By reason of Goei's willful scheme to destroy the United States

21 operations of CypherEdge and his transfer of assets to China and Singapore, as pleaded

22 above, Goei violated the fiduciary duties of loyalty, care, good faith and fair dealing that he

23 owed as Chief Executive Officer of MSCVC and that he owed as a director of MVI, and that

24 he owed as Chief Executive Officer of CypherMetrix, to plaintiffs.

25         21.    Goei, in breach of the fiduciary duties that he owed to plaintiffs has

26 pursued a scheme to enrich himself at plaintiffs' expense. Upon information and belief, at

FIRST AMENDED COMPLAINT- 8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1    plaintiffs' expense Goei was attempting to create a software media and advertising

2    conglomerate "keiretsu" in China that would be owned and controlled by him.

3         22.    By reason of the foregoing, plaintiffs have been damaged in the

4    amount of Seventeen Million Three Hundred Sixty Thousand Dollars ($17,360,000) together

5    with interest accrued thereupon.

6                      **SECOND CLAIM FOR RELIEF**

7              **FOR COMMON LAW FRAUD AGAINST GOEI**

8         23.    Plaintiffs repeat and reallege Paragraphs "1" through "22" above as if

9    fully set forth herein.

10         24.    Goei represented to plaintiffs, as pleaded above, that he was creating a

11    "keiretsu" through CypherMetrix for the benefit of plaintiffs.  Goei further represented that

12    the United States would be one of the two markets that he would pursue.

13         25.    Contrary to Goei's representations, he was pursuing a scheme by

14    which he would gain ownership and control of the assets of CypherMetrix, and have these

15    United States assets transferred to Asian entities under his ownership and/or control.  Goei

16    was pursuing a scheme to use plaintiffs' funds to finance a conglomerate for his personal

17    benefit.

18         26.    Goei made his misrepresentations to plaintiffs with knowledge that

19    they were false when made.

20         27.    Plaintiffs relied upon Goei's misrepresentations and based thereupon,

21    agreed to invest the Seventeen Million Three Hundred Sixty Thousand Dollars in

22    CypherMetrix.

23         28.    By reason of Goei's misrepresentations, plaintiff has been damaged.

24         ///

25         ///

26

FIRST AMENDED COMPLAINT- 9

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

**THIRD CLAIM FOR RELIEF**
**FOR FRAUDULENT NON-DISCLOSURE AGAINST GOEI**

29.    Plaintiffs repeat and reallege Paragraphs "1" through "28" above as if fully set forth herein.

30.    As a fiduciary of plaintiffs, Goei owed them a duty of full disclosure.

31.    Goei had and failed to disclose to plaintiffs his scheme to use plaintiffs' investments to fund a conglomerate of companies owned principally by Goei in China. Goei never disclosed his scheme to shut down all United States operations and divert these assets to China and Singapore.

32.    Had Goei disclosed his scheme to create a Chinese conglomerate owned and controlled principally by him and to eviscerate the operations of CypherMetrix in the United States to benefit operations in China and Singapore owned and/or controlled by him, plaintiffs would not have invested in CypherMetrix.

33.    By reason of the fraudulent non-disclosures of Goei, plaintiffs have been damaged in the amount of Seventeen Million Three Hundred Sixty Thousand Dollars.

**FOURTH CLAIM FOR RELIEF**
**FOR BREACH OF FIDUCIARY DUTY AGAINST GOEI**

34.    Plaintiffs repeat and reallege Paragraphs "1" through "33" above as if fully set forth herein.

35.    From on or about August 18, 2003 to August 17, 2006, Goei was Chief Executive Officer of MSCVC and a director of MVI. Plaintiffs were, and continue to be, venture capital entities. As Chief Executive Officer of MSCVC and as a director of MVI, Goei owed plaintiffs a duty of loyalty, care, good faith and fair dealing.

36.    As venture capitalists, plaintiffs invest millions of dollars in start-up corporations. When plaintiffs invest in a start-up corporation, they insist upon having representation on its board of directors. Upon information and belief, this demand for board

FIRST AMENDED COMPLAINT- 10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

representation is a policy common to virtually all venture capitalists. Having a director on the board allows the venture capitalist full access to corporate information and the ability to shape and influence corporate decisions.

37.    One of the corporations for which plaintiffs provided venture capital financing is Farallon Medical, Inc. ("Farallon"). Plaintiffs invested Two Million Eight Hundred Twenty Nine Thousand and Eighty Eight Dollars ($2,829,088) in Farallon. On a converted basis, plaintiffs own approximately Twenty Five (25%) percent of Farallon. Upon information and belief, plaintiffs (with their interests aggregated) constitute the largest shareholder of Farallon.

38.    Pursuant to a Voting Agreement dated June 7, 2005 by and among, inter alia, plaintiffs and Farallon, plaintiffs were entitled to elect at least one director of Farallon's board of directors (and depending upon other conditions they could be entitled to elect two directors).

39.    The Amended and Restated Voting Agreement dated June 2, 2006, executed by all parties to this lawsuit, purported to supersede and replace the original Voting Agreement. In relevant part the Amended and Restated Voting Agreement provides:

2.    Election of Boards of Directors.

(a) Voting.  During the term of this Agreement, each Voting Party agrees to vote all Shares in such manner as may be necessary to elect (and maintain in office) as members of the Company's Board of Directors the following individuals:

(i)    One (1) Preferred Designee (as defined below) as a Preferred Director;

(ii)   One (1) Common Designee (as defined below) as the Common Director; and

(iii)  Two (2) Mutual Designees (as defined below) as the Mutual Directors.

FIRST AMENDED COMPLAINT- 11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

(b) Designation of Directors. The designees to the Company's Board of Directors described above (each a "Designee") shall be designated as follows:

    (i)    The "Preferred Designee" shall be the Chairman of the Board of Directors and shall be designated by MSC Ventures.

    (ii)    The "Common Designee" shall be the Company's President and Chief Executive Officer.

    (iii)    The "Mutual Designees" shall be designated by the Preferred Designee and the Common Designee.

(c) Current Designees. For the purpose of this Agreement, the current directors of the Company shall be deemed to be the following Designees: (i) Esmond Goei shall be the Preferred Designee; (ii) James T. McKinley shall be the Common Designee, and (iii) Richard Char shall be a Mutual Designee.

(d) Changes in Designees. From time to time during the term of this Agreement, Voting Parties who hold sufficient Shares to select a Designee pursuant to this Agreement (in the event that Voting Parties have the right to designate a Designee) or individuals who have a right to designate a Designee may, in their sole discretion:

    (i)    notify the Company in writing of an intention to remove from the Company's Board of Directors any incumbent Designee who occupies a Board seat for which such Voting Parties are entitled to designate the Designee or for which such individual is entitled to designate the Designee, as the case may be; or

    (ii)    notify the Company in writing of an

FIRST AMENDED COMPLAINT- 12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

intention to select a new Designee for
election to a Board seat for which such
Voting Parties are entitled to designate the
Designee or for which such individual is
entitled to designate the Designee (whether
to replace a prior Designee or to fill a
vacancy in such Board seat), as the case may
be;

In the event of such an initiation of a removal
or selection of a Designee under this section, the
Company shall take such reasonable actions as are
necessary to facilitate such removals or elections,
including, without limitation, soliciting the votes of the
appropriate stockholders, and the Voting Parties shall
vote their Shares to cause: (a) the removal from the
Company's Board of Directors of the Designee or
Designees so designated for removal; and (b) the election
to the Company's Board of Directors of any new
Designee or Designees so designated.

<u>Notwithstanding the above, MSC Ventures may not
remove Esmond Goei as the Preferred Designee without
Esmond Goei's consent.</u>

(emphasis added).

40.    Defendant Goei purported to execute the Amended and Restated
Voting Agreement on behalf of plaintiffs.

41.    Goei did not inform plaintiffs of the restriction, added for the first time
in the Amended and Restated Voting Agreement, that plaintiffs could not remove him as the
Preferred Designee without his consent. Plaintiffs learned of this provision only after the
Amended and Restated Voting Agreement had been executed. Goei executed the Amended
and Restated Voting Agreement containing this provision giving Goei veto power over his
removal without the knowledge and consent of the directors of plaintiffs. Goei had no
authority to execute the Amended and Restated Voting Agreement containing this limitation
on his removal.

FIRST AMENDED COMPLAINT- 13

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

42.     By executing the Amended and Restated Voting Agreement providing that he could not be removed as the Preferred Designee without his consent, Goei violated the fiduciary duties of loyalty, care, good faith and fair dealing that he owed to plaintiffs. Goei unlawfully misused his position as Chief Executive Officer of MSCVC and as a director of MVI to further his own personal interests at the expense of plaintiffs' interests.

43.     Goei had a three year employment agreement to serve as Chief Executive Officer of MSCVC which terminated on August 17, 2006. Upon information and belief, when Goei purported to execute the Amended and Restated Voting Agreement on or about June 6, 2006, he knew that a little over two months later he would no longer have a position with plaintiffs. Goei submitted a resignation letter on August 18, 2006, a day after his employment agreement had expired. Upon information and belief, Goei intentionally negotiated for and obtained his alleged right to remain as Preferred Designee for so long as he chose as an illicit means to provide him with leverage in negotiating with plaintiffs.

44.     By reason of Goei's actions, plaintiffs had no board representation on Farallon's board between August 17, 2006 and February 6, 2007. They did not have insider access to information nor could they participate in the development and implementation of corporate policy and decision making. During this period, Farallon agreed to pay compensation and stock options to Goei and one of his associates which plaintiffs would have opposed. The stock options granted to Goei and his associate were at a below market stock price, which, upon information and belief, was contrary to Farallon's stock option plan. Goei, while serving as a fiduciary of plaintiffs, intentionally thwarted and interfered with corporate policies of plaintiffs, and sought to further his own personal financial interests.

45.     Goei has taken no action to expressly and unequivocally resign as the Chairman of the Board of Farallon. By reason of Goei having been the Preferred Designee, he remains today as the Chairman of the Board of Farallon.

46.     On or about February 6, 2007 Farallon agreed to provide a seat upon

FIRST AMENDED COMPLAINT- 14

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1   its board of directors to MSCVC but not as Chairman of the Board, to which position

2   MSCVC was entitled to appoint its representative.

3           47.     By reason of having no board representation from August 17, 2006 to

4   February 6, 2007 the value of plaintiffs' investment in Farallon was damaged.

5           48.     By reason of Goei serving as Chairman of the Board of Farallon

6   instead of a designee of MSCVC, the value of plaintiffs' investment in Farallon has been

7   damaged.

8           49.     By reason of Goei's breach of fiduciary duty as pleaded above,

9   plaintiffs have been damaged in an amount to be determined, but not less than One Million

10   ($1,000,000) Dollars.

11

12   **FIFTH CLAIM FOR RELIEF**
    **FOR BREACH OF CONTRACT AND**
    **BREACH OF FIDUCIARY DUTY AGAINST BOTH DEFENDANTS**

13

14           50.     Plaintiffs repeat and reallege Paragraphs "1" through "49" above as if

15   fully set forth herein.

16           51.     On August 18, 2003, Goei entered into a written employment

17   agreement with MSCVC (the "Employment Agreement").

18           52.     The Employment Agreement provided in relevant part that:

19           "The Employee [i.e. Goei] is also prohibited from
    acquiring any shares or interests in any of the company's

20   clients without the prior approval in writing from the
    Chief Executive Officer of the Multimedia Development

21   Corporation."

22

23           53.     Secretly and unbeknownst to plaintiffs, on or about November 11,

24   2004, the board of directors of Farallon authorized the issuance of 393,333 warrants to Goei

25   individually.  Upon information and belief the warrants were issued on December 21, 2004,

26   had an exercise price of five ($.05) cents a share and expire on December 20, 2014.

FIRST AMENDED COMPLAINT- 15

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

54. Goei never received any written permission from plaintiffs' directors and/or from the Chief Executive Officer of the Multimedia Development Corporation to acquire these warrants from Farallon.

55. At the time that Goei obtained these warrants, he was working full time for MSCVC and its subsidiaries and affiliates, and had no right to additional compensation from an entity in which plaintiffs invested.

56. The 393,333 warrants were earned by Goei by reason of his duties as an officer of plaintiffs, and should have been issued in the name of, and delivered to, plaintiffs.

57. Upon information and belief, Goei never advised or informed Farallon that he could not lawfully accept the 393,333 warrants.

58. Upon information and belief, Farallon offered to provide the warrants, and did provide the warrants, to Goei to influence his actions as the Chief Executive Officer of MSCVC and as a director of MVI.

59. On or about June 3, 2006 Goei caused the 393,333 warrants to be transferred to his wife Evelyn Goei.

60. Upon information and belief, Goei transferred the 393,333 warrants to his wife in an attempt to defeat the claims of plaintiffs.

61. Upon information and belief, Evelyn Goei conspired with her husband Goei to secrete the 393,333 warrants unlawfully obtained by Goei so as to defeat the claims of plaintiffs.

62. Goei breached his Employment Agreement and the fiduciary duty he owed to plaintiffs by secretly obtaining the 393,333 warrants for himself. By accepting these warrants from Goei, Evelyn Goei is liable, jointly and severally with him, for his breach of the Employment Agreement and his breach of fiduciary duty. All such compensation unlawfully paid to Goei and transferred to Evelyn Goei is the property of plaintiffs.

FIRST AMENDED COMPLAINT- 16

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

63.    Upon information and belief, the warrants have a value of in excess of One Million ($1,000,000) Dollars.

64.    By reason of the foregoing, plaintiffs have been damaged by defendants in an amount to be determined, but in excess of One Million ($1,000,000) Dollars.

## SIXTH CLAIM FOR RELIEF
### FOR CONVERSION AGAINST DEFENDANTS

65.    Plaintiffs repeat and reallege Paragraphs "1" through "64" above as if fully set forth herein.

66.    The 393,333 warrants were unlawfully issued in the name of Goei, were unlawfully transferred to Evelyn Goei and are the rightful property of plaintiffs.

67.    Goei unlawfully converted the 393,333 warrants, which are equitably owned by plaintiffs, into property owned of record by himself, and thereafter transferred record ownership of this property of plaintiffs to his wife, Evelyn Goei.

68.    By reason of this conversion of plaintiffs' warrants by defendants, plaintiffs are entitled to an order of this Court compelling and ordering defendants to cause the 393,333 warrants issued in Goei's name and transferred by him to Evelyn Goei to be transferred to plaintiffs.

## SEVENTH CLAIM FOR RELIEF
### FOR AN ACCOUNTING AGAINST DEFENDANTS

69.    Plaintiffs repeat and reallege Paragraphs "1" through "68" above as if fully set forth herein.

70.    Plaintiffs, as venture capitalists, have invested in other entities besides CypherMetrix and CypherEdge, and their subsidiaries and affiliates.

71.    One of the other entities in which plaintiffs invested was NexusEdge Technologies Sdn Bhd ("NexusEdge Malaysia").

FIRST AMENDED COMPLAINT- 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

72.     On April 19, 2005, NexusEdge Malaysia accused Goei of demanding that it set aside shares of NexusEdge Malaysia for himself and other employees of MSCVC. NexusEdge Malaysia accused Goei of stating that the compensation that he and the employees received from MSCVC was not sufficient, and that they were entitled to be rewarded fairly.

73.     Goei's demand for stock from NexusEdge Malaysia is consistent with his receipt of the warrants from Farallon.

74.     Upon information and belief, while serving as Chief Executive Officer of MSCVC and as a director of MVI, Goei may have engaged in a pattern and practice of demanding stock options, warrants and other compensation for himself and other employees of plaintiffs from entities in which plaintiffs planned to invest or had invested, in contravention of his employment agreement and the fiduciary duty that he owed to plaintiffs.

75.     Plaintiffs do not know the amount or extent of stock, options, warrants and other compensation that Goei obtained for himself and other employees of plaintiffs from entities in which plaintiffs planned to invest or had invested, and the extent to which he assigned or transferred such unlawfully obtained assets to his wife, Evelyn Goei.

76.     By reason of the foregoing, plaintiffs are entitled to an accounting from Goei and Evelyn Goei of all stock, warrants, options and other compensation that Goei received on behalf of himself (including that held in the name of his wife and other family members) and other employees of plaintiffs from companies in which plaintiffs planned to invest or had invested and which Goei received while, or by reason of, his serving as Chief Executive Officer of MSCVC and a director of MVI.  Based upon the results of this accounting, any such stock, warrants, options and other compensation should be transferred to plaintiffs by defendants and/or Goei should be liable in damages for all such assets obtained by him for himself and other employees of plaintiffs and/or Evelyn Goei should be liable in damages for all such assets obtained by her, jointly and severally with Goei.

FIRST AMENDED COMPLAINT- 18

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs MSC Venture Corporation Sdn Bhd and MSC Venture One Sdn Bhd demand judgment against the defendants as follows:

       i.       Upon the First, Second and Third Claims for Relief against defendant Esmond Goei damages of Seventeen Million Three Hundred Sixty Thousand Dollars ($17,360,000), together with interest accrued thereupon;

       ii.      On the Fourth Claim For Relief, that plaintiffs recover damages against defendant Esmond Goei in the amount of One Million ($1,000,000) Dollars;

       iii.     On the Fifth Claim for Relief, that plaintiffs recover damages against defendants Esmond Goei and Evelyn Goei, jointly and severally, in the amount of One Million ($1,000,000) Dollars;

       iv.     On the Sixth Claim for Relief, that this Court order and compel defendants Esmond Goei and Evelyn Goei to cause the 393,333 warrants issued in Goei's name and transferred to Evelyn Goei to be transferred to plaintiffs;

       v.     On the Seventh Claim for Relief, that this Court order an accounting from Goei and Evelyn Goei of all stock warrants, options and other compensation that Goei received on behalf of himself (including that held in the name of his wife and other family members) and other employees of plaintiffs from companies in which plaintiffs planned to invest or had invested, and which Goei acquired while, or by reason of, his serving as Chief Executive Officer of MSCVC and a director of MVI and based upon the results of this accounting, any such stock, warrants, options and other compensation should be transferred to plaintiffs by defendants and/or Goei should be liable in damages for all such assets obtained by him for himself and other employees of plaintiffs and/or Evelyn Goei should be liable in damages for all such assets obtained by her, jointly and severally with Goei;

    ///

FIRST AMENDED COMPLAINT- 19

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

1              vi.     The costs and expenses of this action, including reasonable

2    attorney's fees; and,

3              vii.    Such other and further relief as this Court deems necessary and

4    just in the circumstances.

5          Dated this 25th day of July, 2007.

6                                          SCHWABE WILLIAMSON & WYATT

7
                                    By: /s/ Stephanie P. Berntsen
8                                       Matthew Turetsky, WSBA #23611
                                        E-mail: mturetsky@schwabe.com
9                                       Stephanie P. Berntsen, WSBA #33072
                                        E-mail: sberntsen@schwabe.com
10                                      1420 Fifth Avenue, Suite 3010
                                        Seattle, WA 98101-2393
11                                      Telephone: (206) 622-1711
                                        Facsimile: (206) 292-0460
12                                      *Attorneys for Plaintiffs*
                                        *MSC Venture Corp. SDN BHD and*
13                                      *MSC Venture One SDN BHD and*
                                        *Third-Party Defendants*
14                                      *CYPHERMETRIX, INC., and CYPHEREDGE*
                                        *TECHNOLOGIES, INC.*
15

16                                      HOFHEIMER GARTLIR & GROSS, LLP

17
                                    By: /s/ Douglas Gross
18                                      Craig Weiner, NYBA #3321
                                        E-mail: cweiner@hgg.com
19                                      Douglas Gross, NYBA #5984
                                        E-mail: dgross@hgg.com
20                                      530 Fifth Avenue, 9th Floor
                                        New York, New York 10036
21                                      Telephone: (212) 818-9000
                                        Facsimile: (212) 869-4930
22                                      *Attorneys for Plaintiffs*
                                        *MSC Venture Corp. SDN BHD and*
23                                      *MSC Venture One SDN BHD and*
                                        *Third-Party Defendants*
24                                      *CYPHERMETRIX, INC., and CYPHEREDGE*
                                        *TECHNOLOGIES, INC.*
25

26

FIRST AMENDED COMPLAINT- 20

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
206.622.1711

SEA/116428/151807/RDA/378869.1

1

2

3    COZEN O'CONNOR

4    By: /s/ Benjamin J. Stone
          Benjamin J. Stone
5          E-mail: bstone@cozen.com
          1201 Third Avenue, Suite 5200
6          Seattle, WA  98101
          Telephone:  (206) 340-1000
7          Facsimile:  (206) 621-8783
          *Attorneys for Third-Party Defendants*
8          *CYPHERMETRIX, INC.; CYPHEREDGE*
          *TECHNOLOGIES, INC.; James B. Linkous*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT- 21

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA  98101
206.622.1711

SEA/116428/151807/RDA/378869.1

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on the 25th day of July, 2007, I caused to be served the foregoing

3  FIRST AMENDED COMPLAINT and that all parties required to be served will be

4  electronically notified by the Clerk of the Court.  The following will be served:

5
         John H. Chun
6        Lawrence C. Locker
         Denise L. Ashbaugh
7        Summit Law Group, P.L.L.C.
         315 Fifth Avenue South, Suite 1000
8        Seattle, WA  98104-2682

9
                                        /s/ Stephanie P. Berntsen
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA  98101
206.622.1711

SEA/116428/151807/RDA/378869.1